**Budget** SEARS
CAR & TRUCK RENTAL
rent a car of Arizona

P.O. BOX 20368, PHOENIX, ARIZONA 85036
PHOENIX (602) 267-4000  1-800-289-4001  YUMA (602) 344-1822
AN INDEPENDENT BUDGET SYSTEM LICENSEE

RK # 340678

| | Renter | D.L. Expiration 02/15/96 | | Current Date 11/24/93 | | Rental Agreement Number/Rental Location |
|---|---|---|---|---|---|---|
| RPIN, ORIN | | | | | | 301676 MS2 |
| NE | Additional Driver | D.L. Expiration | | 3KC1303 Vehicle Number/Owning Location | | |
| E: MESA 2 | Return Location | 11/30/93 Due Date | | KEC974 Vehicle License Number/State AZ | | Date/Time In |
| | | Payment | | SHADOW Model/Payload/SPACE Number | | 11/24 Date/Time Out 16:28 |

: AMERICAN F PO: PLUS TAX AD: MICHELE  032411019 Confirmation Number   Mileage In
: DB  CL: 181101778200 DAYS: 14 @ 0018  9051 CORP ID/Rate Code 4W   FUEL 8  21986 Mileage Out

UNL/D  Mileage Allowance

NOTICE TO RENTER: LOSS DAMAGE WAIVER (LDW)

Loss Damage Waiver is declined, Renter is responsible for the full value (or lesser amount indicated) of loss of or any damage to Vehicle, including loss or damage due to collision, vandalism and theft, and loss of use and related expenses, regardless of RENTER'S RESPONSIBILITY (if other than full value):

| Loss Damage Waiver (LDW) | Personal Accident Insurance (PAI) |
|---|---|
| EPTS AT  8.95/DAY | DECLINED |
| Personal Effects Coverage (PEC) | Fuel Purchase Option (FPO) |
| LINED | DECLINED |

enter initials to ACCEPT/DECLINE optional
services as shown above.
E DAILY RATE IS CALCULATED ON A
ENDAR DAY BASIS*

'L MUST REMAIN IN USA

e undersigned hereby acknowledge receipt of the Rental Agreement Terms and nditions, form number AZ-TC-01 (rev 01/93), which together with this Rental eement form and applicable addendums shall constitute the Agreement for rental.

ONLY Renter and Authorized Drivers may operate Vehicle

Signature of Additional Driver

|  | |
|---|---|
| HOURLY | 12.00 |
| DAILY | 18.00 |
| L.D.W. | 8.95/DAY |
| REFUELING | 2.49/GAL |
| VL TAX @ | 5.0% |
| TAX @ | 6.5% |
| COUNTY SURCHARGE | 2.50 |
| LESS DEPOSITS | -100.00 |
| TOTAL | -100.00 |

Signature of Renter

DRAWER # 03
Prepared By 4275  Computed By   ALL CHARGES SUBJECT TO FINAL AUDIT

You shall be in violation of ARS 13-1806 if this vehicle is not returned within 72 hours of the due date and time specified herein and/or be subject to imprisonment in the state prison for up to 1.9 years and a fine of up to $150,000.00.

S. Shelby   892316

---

928 P.2d 714

**SOUTHWEST AMBULANCE OF SOUTH-EASTERN ARIZONA, INC. dba Southwest Ambulance of Pima County; and Northwest Fire District, Petitioners,**

v.

**SUPERIOR COURT OF the STATE OF ARIZONA, In and For the COUNTY OF MARICOPA, and The Honorable Paul A. Katz, a Judge thereof, Respondents,**

**and**

**RURAL/METRO CORPORATION, Real Party in Interest.**

No. 1 CA–SA 96–0176.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 6, 1996.

Review Denied Nov. 19, 1996.

Goldstein & McGroder, Ltd., P.C. by Patrick J. McGroder, III, Suzanne P. Clarke, Phoenix, Leonard, Felker, Altfeld & Battaile, P.C. by Donna M. Aversa, Tucson, for Petitioners.

O'Connor Cavanagh Law Firm by Lawrence J. Rosenfeld, Jill E.C. Freret, Phoenix, for Respondents.

Grant Woods, Attorney General by Kevin D. Ray, Assistant Attorney General, Phoenix, for Arizona Department of Health Services.

OPINION

EHRLICH, Judge.

Southwest Ambulance of Southeastern Arizona ("Southwest") and Northwest Fire District ("Northwest") (collectively "petitioners") seek special action relief in the form of a ruling that the respondent superior court lacked jurisdiction to intervene in administrative proceedings involving the petitioners and the real party in interest, Rural/Metro Corporation ("Rural/Metro"). We accept the case for special action review because the petitioners have no other adequate, speedy remedy to raise issues of law challenging the superior court's exercise of jurisdiction. Because the superior court erroneously accepted jurisdiction, we grant relief and remand the matter to the Arizona Department of Health Services ("ADHS") for such administrative resolution as is appropriate.

*PROCEDURAL HISTORY*

The underlying action is an administrative proceeding in which Southwest applied to provide ambulance service to a portion of Pima County already served by Rural/Metro. The purpose of the proceeding is to determine whether there is a need for Southwest's services in the specified area. *See* Arizona Administrative Code ("A.A.C.") R9–13–1404(C)(6).

Rural/Metro vigorously opposed Southwest's application and Northwest intervened on Southwest's behalf. Extensive hearings on the matter began on June 5, 1995, before Terry Corbett, a hearing officer appointed by the director of ADHS ("director"). *See* Ariz. Rev.Stat. Ann. ("A.R.S.") 36–112(A). On February 23, 1996, the hearings concluded, and Corbett took the matter under advisement to formulate findings of fact, conclusions of law and recommendations to be submitted to the director. A.R.S. § 36–112(C); A.A.C. R9–1–118(B)–(D).

On May 3, 1996, Corbett telephoned the parties to inform them that he had been approached by an attorney representing a fire district in Yavapai County regarding Corbett's possible association as counsel on litigation unrelated but similar to the Southwest–Rural/Metro case. In response, on May 8, Rural/Metro wrote a four-page letter to Corbett, demanding that he immediately recuse himself or submit to a hearing to determine whether he was biased or prejudiced. Corbett refused.

Rural/Metro then wrote a letter to and telephoned counsel for the director asking for Corbett's disqualification or for a stay pending a full investigation. On May 14, 1996, Rural/Metro wrote a letter to the director, demanding that oral argument be scheduled on its request to stay Corbett's deliberations and threatening to proceed "in another forum" if its demands were not met.

The next day, Corbett filed his recommended decision with the director. That same day, Rural/Metro filed a petition for special action in superior court, seeking Corbett's recusal or, in the alternative, that discovery and a hearing be scheduled to determine whether Corbett should be disqualified. Rural/Metro also asked the court to stay the hearing officer's decision pending a determination whether the court could properly exercise jurisdiction over its petition. Petitioners opposed Rural/Metro's stay request, maintaining that Rural/Metro had failed to pursue or exhaust administrative remedies, including its right to appeal from the final decision of the director.

On the following day, the superior court held a stay hearing and asked the parties for

briefs on the question of its jurisdiction. Oral argument was scheduled for May 30, 1996, but the court canceled it and issued a decision without argument. It ordered the director to begin disqualification investigatory proceedings and hold an evidentiary hearing on Corbett's potential bias before June 15. The court also ordered that, if the director disqualified Corbett, the entire hearing must "begin anew."

Petitioners sought a stay of the superior court order; the court refused and ordered compliance by June 12, 1996. This special action followed. We stayed and now vacate the superior court's orders.

## DISCUSSION

■ When a party in an administrative proceeding fails to exhaust administrative remedies and pursues judicial relief instead, the superior court lacks jurisdiction over the matter. *E.g., Univar Corp. v. City of Phoenix,* 122 Ariz. 220, 223, 594 P.2d 86, 89 (1979); *Mountain View Pioneer Hosp. v. Employment Sec. Comm'n,* 107 Ariz. 81, 85, 482 P.2d 448, 452 (1971); *Estate of Bohn v. Waddell,* 174 Ariz. 239, 245–46, 848 P.2d 324, 330–31 (App.1992), *cert. denied,* 509 U.S. 906, 113 S.Ct. 3000, 125 L.Ed.2d 693 (1993). The exhaustion rule is jurisdictional; the superior court has no discretion regarding its application. *Estate of Bohn,* 174 Ariz. at 246, 848 P.2d at 331. The doctrine promotes administrative and judicial efficiency, as well as recognizes the special competence of the agency. *Id.*

■ ADHS hearing officers are appointed by the director. A.R.S. § 36–112(A); A.A.C. R9–1–104(A). Section 36–112(B) of the statutes allows a party wishing to disqualify a hearing officer prior to a hearing to "file an affidavit for change of hearing officer" with ADHS. This is the only mechanism provided by which a hearing officer may be challenged should a party desire to do so. The statutory procedure used for a peremptory challenge of a hearing officer also is the procedure to be utilized when a party seeks to challenge a hearing officer for cause because the administrative code, A.A.C. R9–1–104(B), incorporates section 36–112(B).

The rule governing the disqualification of a hearing officer is R9–1–104(B):

Any hearing officer is subject to disqualification. *Any party may petition under A.R.S. § 36–112(B) for the disqualification of a hearing officer* within five days of receipt of notice indicating the hearing officer's identity or *upon discovering facts indicating grounds for disqualification.* [Emphasis added.]

By using the disjunctive "or," the rule applies section 36–112(B), which specifies the filing of an affidavit, when, as here, a party asserts it has discovered "facts indicating grounds for disqualification."

■ Rural/Metro filed no "affidavit for change of hearing officer," no statements made under oath and no formal motions or filings of any kind. It maintains nevertheless that its correspondence with Corbett and to ADHS constitutes sufficient effort to "have attempted to exhaust, in good faith, our administrative remedies." We disagree.

■ A hearing officer will not be disqualified absent a showing of actual bias. *E.g., Martin v. Superior Court (Yue),* 135 Ariz. 258, 260, 660 P.2d 859, 861 (1983); *Jenners v. Industrial Comm'n,* 16 Ariz.App. 81, 83, 491 P.2d 31, 33 (1971); *Lathrop v. Arizona Bd. of Chiropractic Exam'rs,* 182 Ariz. 172, 180, 894 P.2d 715, 723 (App.1995). The law requires as much of an attestation to seek to disqualify a hearing officer for cause as it does to exercise a peremptory challenge of a hearing officer. A lesser standard would undermine recognition of the agency's expertise and subvert the goal of administrative and judicial efficiency. Rural/Metro's letter to Corbett setting forth general allegations of bias and questioning Corbett's ability to be fair and impartial is insufficient to disqualify him. *See Jenners,* 16 Ariz.App. at 83, 491 P.2d at 33 (affidavit containing only general allegations of bias insufficient to warrant disqualification). Equally unpersuasive are its demands to the ADHS counsel and director.

■ If Rural/Metro wishes to allege actual bias and by that means challenge the hearing officer's recommendations, the law provides the procedure to do so. Both the statute, A.R.S. § 36–112(C), and the administrative code, A.A.C. R9–1–118, R9–1–119, and R9–1–120, vest the director with the authority to

review and revise the hearing officer's recommended decision and issue the agency's final decision. Judicial review then is available. *See* the Administrative Review Act, A.R.S. § 12–901 *et seq.* The superior court erred by ordering the ADHS director to interrupt the administrative process to hold an evidentiary hearing.

The superior court further erred by declaring that, if the director deemed disqualification necessary, the hearing must "begin anew." The administrative code provides that, upon a hearing officer's disqualification, the director "shall appoint a substitute hearing officer." A.A.C. R9–1–104(C). The substitute hearing officer "shall use any existing record and may conduct further appropriate proceedings in the interests of justice." A.A.C. R9–1–118(E). The court was not authorized to supplant administrative code provisions with its order to "begin anew" should Corbett be disqualified.

### CONCLUSION

Because the superior court erroneously exercised jurisdiction over an administrative proceeding when the petitioning party had not yet exhausted statutorily-prescribed remedies, we vacate its orders and remand the matter to ADHS for appropriate further proceedings.

GERBER and PATTERSON, JJ., concur.